WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>Maliek Quabena Frazier,<br><br>  Defendant. | No. CR-20-50218-001-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Defendant Maliek Quabena Frazier's ("Frazier") motion for reconsideration (Doc. 9) of the March 10, 2021 order denying his motion for early termination of supervised release (Doc. 8). For the following reasons, the motion for reconsideration is denied.

## BACKGROUND

In July 2009, Frazier and four co-defendants were indicted in the United States District Court for the Eastern District of Pennsylvania on one count of conspiracy to engage in methamphetamine trafficking. (Doc. 1-1 [indictment]; Doc. 1-3 at 4 [docket sheet entry No. 35].) The indictment alleged that the conspiracy spanned from October 2007 to February 2009 and that the leaders of the conspiracy were part of "a faction of the Crips gang in the Lehigh Valley area." (Doc. 1-1 ¶¶ 1-2.)

In June 2011, Frazier was convicted via guilty plea of the conspiracy charge and sentenced to 10 years' imprisonment. (Doc. 1-2 at 1-2.) The judgment specified that, upon his release from imprisonment, Frazier would be placed on supervised release for 10 years.

(*Id.* at 3.)  The judgment also included several special conditions of supervision, including that Frazier "receive drug and alcohol treatment deemed appropriate by the U.S. Probation Department while on supervised release," "receive at least 3 random drug tests and more if deemed appropriate by the U.S. Probation [D]epartment," disclose his "yearly tax returns and monthly financial statements," and not "open any lines of credit or credit cards . . . with out the advance permission of the United States Probation Department."  (*Id.* at 4.)

On or around August 22, 2017, Frazier was released from prison and began serving his 10-year term of supervised release.  (Doc. 1 at 1.)[1]

On September 29, 2020, jurisdiction over Frazier was transferred from the Eastern District of Pennsylvania to the District of Arizona.  (Doc. 1.)

On February 11, 2021, Frazier filed, through counsel, a motion for early termination of supervised release.  (Doc. 2.)  In a nutshell, Frazier argued he is entitled to early termination because (1) he has "maintained a stable residence, employment and has supported his family since his release"; (2) he has complied with all conditions of supervision, obtained certification as a welder fabricator, secured employment, and is currently participating in management training; (3) he didn't play an aggravated role in the underlying drug crime; (4) he has "no documented history of violence"; (5) he hasn't been arrested since his release; (6) he hasn't used drugs or abused alcohol since his release; (7) he has no history of mental illness; (8) there were no identifiable victims in the underlying case; and (9) he poses no risk to public safety based on the "Risk Protection Index."  (Doc. 2-2 at 5-6.)

On February 23, 2021, the government filed a response to Frazier's motion.  (Doc. 5.)  Although the government acknowledged that Frazier is statutorily eligible for early termination—"Defendant meets the criteria of early termination"—it argued that Frazier's request should be denied because (1) Frazier had only served approximately 35% of his

---

[1]  In his original motion for early termination, and again in his motion for reconsideration, Frazier states that he was released from prison in September 2016.  (Doc. 2-2 at 1; Doc. 10 at 1.)  This assertion conflicts with the transfer of jurisdiction paperwork from the Eastern District of Pennsylvania, which states that the supervised release term began on August 22, 2017.  (Doc. 1 at 1.)  Similarly, the BOP's inmate locator website lists Frazier's release date as August 22, 2017.

supervised release term at the time of his motion; (2) Frazier's "Probation Officer in the District of Arizona opposes early termination of supervised release at this juncture"; and (3) Frazier "was in Criminal History Category VI at the time of his sentencing on the underlying offense and design[at]ed as a career Offender," with prior convictions for "Burglary, Possession with the Intent to Distribute Cocaine and possession of marijuana," and was "with a gang based in Compton, California at the time of his arrest and a methamphetamine dealer." (*Id.* at 1-2.)

On March 10, 2021, the Court issued an order denying Frazier's motion. (Doc. 8.) It provided as follows: "Although the Court is impressed with Mr. Frazier's performance on supervised release to date and encourages him to keep up the good work, termination would be premature at this time given the severity of Mr. Frazier's criminal history and of the crime that resulted in the supervised release term. It is possible that early termination will be warranted after some additional years of compliance." (*Id.*)

On April 5, 2021, Frazier filed the pending motion for reconsideration (Doc. 9) and a supporting memorandum (Doc. 10).

**DISCUSSION**

Frazier seeks reconsideration of the March 10, 2021 order denying his request for early termination of supervised release on the grounds that (1) the order was based on "the incorrect view that a movant must serve at least one-half of the term of supervised release to be granted early release"; (2) the Court failed to consider the relevant statutory factors and didn't explain "what is left to be done on supervised release for Mr. Frazier," given that he "has successfully integrated himself back into the community, by educating himself, finding solid employment and housing, by supporting his family, and by remaining alcohol, drugs and crime free"; and (3) the Court violated Rule 32.1(c) of the Federal Rules of Criminal Procedure by denying his motion without holding a hearing. (Doc. 10.)

These arguments lack merit. As an initial matter, Frazier's request for reconsideration is untimely. "Although the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration, numerous circuit courts have

held that motions for reconsideration may be filed in criminal cases. [Those] [c]ourts have held that motions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." *United States v. Krug*, 2012 WL 12973474, *1 (C.D. Cal. 2012) (citations and internal quotation marks omitted). Here, the rule that would govern an equivalent motion in a civil proceeding is LRCiv 7.2(g), which provides, among other things, that "any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion." Here, the challenged order was issued on March 10, 2021 yet Frazier didn't file his reconsideration request until April 5, 2021—26 days later. This was untimely.

Putting aside its untimeliness, Frazier's reconsideration request fails on the merits. First, the March 10, 2021 order does not imply (much less state) that a defendant must serve at least half of his term of supervised release before becoming eligible for early termination and the Court certainly didn't apply such a mistaken principle when denying Frazier's original motion. The Court is well aware that, under 18 U.S.C. § 3583(e)(1), a court "may . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." The statement in the March 10, 2021 order that termination would be "premature" was not a statement about statutory ineligibility—rather, it was a statement that the interest of justice would not be served by releasing a defendant with an extensive criminal history punctuated by drug convictions and gang affiliations after serving only a small fraction of his originally imposed supervised release term.

Second, and in a related vein, although the March 10, 2021 order could have been more clear on this point, the Court is well aware of the standards governing requests for early termination of supervised release and applied those standards when evaluating Frazier's initial motion. In *United States v. Emmett*, 749 F.3d 817 (9th Cir. 2014), the Ninth Circuit explained that "[t]he correct legal standard for deciding a motion to terminate supervised release is set forth in 18 U.S.C. § 3583(e). The statute provides that, after

considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'  The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.* at 819 (citations omitted).  Here, although the evidence suggests that the "conduct of the defendant" has been exemplary since Frazier's supervised release term began in August 2017, that is only part of the equation.  The Court also must consider certain § 3553 factors, including the "history and characteristics of the defendant" per § 3553(a)(1) and the need "to protect the public from further crimes of the defendant" per § 3553(a)(2)(C), as well as the "interest of justice."  Because Frazier has such a troubling criminal history—he was in Criminal History Category VI at the time of the gang-related drug trafficking conviction that resulted in his current supervised release term—the Court believes that the interests of justice and public safety would best be served by retaining, for at least a few more years, the supervisory framework that has enabled Frazier to thrive and remain crime-free during his first few years of post-release life.  Nor is there any merit to Frazier's contention that the March 10, 2021 order failed to explain "what is left to be done on supervised release for Mr. Frazier."  In fact, the March 10, 2021 order expressly answered this question—Frazier's charge is to "keep up the good work," *i.e.,* to continue living a productive and crime-free life, because "some additional years of compliance" may allay the Court's lingering concerns about recidivism and protection of the public, which have been tempered (but not extinguished) by Frazier's post-release performance to date.

Third, Frazier is incorrect that he was entitled to a hearing under Rule 32.1(c) before his motion could be denied.  Rule 32.1(c) provides that, "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation."  Here, Rule 32.1(c) wasn't triggered for the simple reason that Frazier's conditions of supervised release *weren't* modified—his request for modification was

denied. *See, e.g., United States v. Nonahal*, 338 F.3d 668, 671 (7th Cir. 2003) ("[T]he rule does not compel the court to hold a hearing before *refusing* a request for modification"); *United States v. Insaulgarat*, 280 F. App'x 367, 368 (5th Cir. 2008) ("Pursuant to the plain language of the statute, a hearing is not required if the district court denies a defendant's motion to modify the conditions of supervised release."). Under Rule 32.1(c), the right to a hearing arises only when a modification occurs (and even then, a hearing isn't required under Rule 32.1(c)(2)(B) if the change is favorable to the defendant and doesn't extend the supervision term).

    Accordingly, **IT IS ORDERED** that Frazier's motion for reconsideration (Doc. 9) is **denied**.

    Dated this 20th day of April, 2021.

Dominic W. Lanza
United States District Judge